UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BRENDA L. MELENDEZ, as Parent and Natural
Guardian of J.C., and BRENDA L. MELENDEZ,
Individually,

                              Plaintiffs,                        **COMPLAINT**

                                                                            **21-CV-**

       -against-

RICHARD CARRANZA, in his official capacity
as Chancellor of the New York City Department of
Education, NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendants.
------------------------------------------------------------------------x

       Plaintiff Brenda L. Melendez ("Parent"), the parent and natural guardian of J.C.[1], in the above-captioned case, as and for her Complaint, alleges as follows:

## JURISDICTION AND VENUE

1. The instant case arises under a federal statute, the Individuals with Disabilities Education Act ("IDEA") (20 U.S.C. §1400, et seq.) and the regulations of the United States Department of Education, which were promulgated pursuant to authority granted by the statute (34 C.F.R. Part 300).

---

[1] Although the full name of the Parent is used in the Complaint herein, pursuant to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. §1232g (and 34 C.F.R. Part 99), Plaintiff is using the initials of the student to protect the student's privacy.

1

2. This Court has subject matter jurisdiction of this matter under 28 U.S.C. §1331, in that claims arise under federal law (IDEA), 28 U.S.C. §1343(a), in that the claims herein arise under laws providing for the protection of civil rights, and under 20 U.S.C. §1415(j).

3. To the extent, if any, that this case involves questions of special education rights under New York State law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

4. Pursuant to 28 U.S.C. §1391(b), venue is properly placed within the Eastern District of New York in that Defendants New York City Department of Education ("DOE"), Richard Carranza, Chancellor of the New York City Department of Education. Both maintain business offices in Kings County.

5. Plaintiffs are entitled to costs and attorneys' fees under 42 U.S.C. §1988(b) and 20 U.S.C. §1415(i), if determined to be a prevailing party.

## FACTUAL ALLEGATIONS

6. Plaintiff Brenda L. Melendez is J.C.'s Parent.

7. J.C. is an 11-year-old boy who suffers from a brain injury. As a result of his brain injury, he has global developmental impairments. These impairments adversely affect his educational abilities and performance. J.C. is non-verbal and non-ambulatory and has highly intensive management needs and requires a high degree of individualized attention, instruction and intervention.

8. J.C. is classified as a student with a disability, and is a resident of New York City. As such, DOE is obligated to provide him with a Free and Appropriate Education ("FAPE") pursuant to IDEA. Accordingly, the DOE must provide J.C. with an appropriate educational placement, set forth in an Individualized Education Program ("IEP"), for every school year.

9. On or about May 15, 2018, the DOE's Committee on Special Education 10 ("CSE 10") met for the purpose of developing an IEP for J.C. for the 2018-2019 School Year.

10. CSE 10 recommended that J.C. attend a 12:1:3+1 class in a District 75 public school. CSE 10 also recommended that J.C. receive individual O.T., P.T., Speech/Language therapy in 30 minute sessions.

11. Parent disagreed with that recommendation because it failed to offer or provide a FAPE for J.C. for the 18-19 School Year.

12. On June 21, 2018, Parent provided DOE with a 10-Day Notice advising that absent an appropriate placement recommendation by DOE, J.C. would attend the International Institute for the Brain ("iBRAIN") for the 2018-2019 school year.

13. On July 9, 2018, J.C. commenced attending iBRAIN where he remains a student. J.C. attended a 6:1:1 class and also has the services of a 1:1 paraprofessional during the school day. He received special education related services, (Physical Therapy, Occupational Therapy, Vision Education, Speech & Language Therapy, Parent Counseling and Training and Assistive Technology Services) on a 1:1 basis for 60 minute sessions, as well as the use of an assistive technology device and special transportation services that consisted of a 1:1 transportation paraprofessional, a wheel chair accessible vehicle with air conditioning, and limited travel time.

14. On July 9, 2018, Parent brought a due process complaint under Impartial Hearing Case No. 175166 against DOE alleging, among other things, that the DOE did not provide J.C. with a FAPE for the 2018-2019 school year and requesting as relief, among other things, a "stay-put" or pendency order requiring the DOE fund J.C.'s placement at iBRAIN during the pendency of the due process proceeding, as required under 20 U.S.C. § 1415(j).

15. IHO Dora M. Lassinger (IHO "Lassinger") was initially assigned to hear the case.

16. In an Interim Order on Pendency dated November 13, 2018, IHO Lassinger denied Parent's request for pendency at iBRAIN, then recused from the case. The case was reassigned and heard by IHO Susan Lushing.

17. By decision dated September 21, 2020, IHO Lushing found that 1) the DOE failed to provide a FAPE for the 2018-2019 School Year; 2) the Parent's placement of J.C. at iBRAIN was appropriate as it provided educational benefits to the Student, and 3) the equities favored the Parent but at a reduction of about 33% because of claimed parental noncooperation.

18. IHO Lushing's decision was appealed to the SRO in SRO Decision Number 20-169. The SRO upheld IHO Lushing's determination and ruled that DOE's recommendation denied a FAPE to J.C. and that J.C.'s educational placement at iBRAIN was appropriate.

19. On or about May 30, 2019, the DOE's CSE 10 again met for the purpose of developing an IEP for J.C. for the 2019-2020 School Year.

20. CSE 10 again recommended essentially the same educational program and placement that had been previously rejected by Parent and found to have been a denial of a FAPE.

21. The CSE 10's recommended 12:1:3+1 class, plus 30 minute related service sessions, were determined to be inappropriate by both the IHO and SRO.

22. Parent disagreed with that recommendation because it failed to offer or provide a FAPE for J.C. for the 2019-2020 School Year.

23. Accordingly, by letter dated June 21, 2019, Parent advised DOE, through a statutory "ten-day notice," of her intent to re-enroll J.C. in iBRAIN for the 2019-2020 school year and to seek public funding for J.C.'s education at iBRAIN.

24. J.C. continued his education at iBRAIN for the 2019-2020 school year. During the 2019-2020 school year, J.C. received all of his academic and related services at iBRAIN. He had an extended school day and was part of a twelve (12)-month program. J.C. attended a 6:1:1 class and also had the services of a 1:1 paraprofessional during the school day. He received special education related services (Physical Therapy, Occupational Therapy, Vision Education Services, Speech and Language Therapy, Parent Counseling and Training and Assistive Technology Services), on an individual basis for 60 minute sessions, as well as the use of an assistive technology device and special transportation services that consisted of a 1:1 transportation professional, a wheel chair accessible vehicle with air conditioning, and limited travel time.

25. By letter dated July 8, 2019, Parent brought a due process complaint in IHO Case No. 185096 against DOE alleging, among other things, that the DOE did not offer or provide J.C. with a FAPE for the 2019-2020 school year, and requesting as relief, among other things, a "stay-put" or pendency order. Such relief would require the DOE to fund J.C.'s placement at iBRAIN during the pendency of the due process proceeding, as required by 20 U.S.C. § 1415(j). The IDEA's stay-put provision, 20 U.S.C. § 1415(j), provides, among other things, that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and Parent otherwise agrees, the child shall remain in the then-current educational placement of such child.

26. Parent's July 8, 2019 due process complaint ("DPC") was initially assigned to IHO Edgar DeLeon. After several recusals by various IHOs, DOE then appointed IHO Suzanne Carter to hear this case.

27. By decision dated January 13, 2020, IHO Carter determined that iBRAIN was the Student's pendency placement. DOE appealed from that decision to the New York State Education Department's Office of State Review. And by decision dated March 25, 2020, State Review Officer Sarah Harrington upheld iBRAIN's pendency order and ruled that iBRAIN was indeed the Student's pendency placement. (SRO Dec. 20-033).

28. An impartial due process hearing regarding the Parent's substantive DPC claims was held in Case No. 185096, concluding June 29, 2020.

29. In IHO Case No. 185096, involving the 2019-2020 School Year, Impartial Hearing Officer James McKeever ("IHO McKeever") issued a Findings of Fact and Decision ("FOFD") dated August 30, 2020, finding that: 1) DOE denied J.C. a FAPE during the 2019-2020 school year because the recommended 12:1+(3:1) special class was too large to meet the student's individual needs; 2) the Parent's placement at iBRAIN was appropriate; and 3) equitable considerations weighed in favor of a full award of tuition and related services for J.C. at iBRAIN. The IHO ordered the district to reimburse the parent or provide direct funding for the total cost of tuition at iBRAIN, as well as for related services and transportation for the 2019-20 school year.

30. In her DPC, the Parent requested that the CSE re-convene for the purpose of developing an appropriate IEP for her disabled son.

31. Accordingly, on or about May 13, 2020, CSE District 9 met and recommended an IEP for J.C. that IEP recommend J.C. attend a 6:1:1 class, with 1:1 paraprofessional, and a 1:1 related services for 60-minute sessions.

32. The DOE appealed from the IHO's determination to the Office of State Review of the New York State Education Department.

33. On November 6, 2020, State Review Officer Steven Krolak ("SRO Krolak") issued a decision in SRO Dec. No. 20-157 ("SRO 20-157"). In SRO 20-157, SRO Krolak ordered that the IHO's decision dated August 30, 2020, be modified by reversing that portion which found that the DOE did not offer the Student a FAPE for the 2019-20 school year.

34. In SRO Dec. No. 20-157, SRO Krolak erred in failing to find that the District's recommendation of a 12:1+(3:1) special class, with the additional support of a 1:1 paraprofessional, denied the student a FAPE for the 2019-20 school year.

35. As SRO Krolak noted, according to 8 N.Y.C.R.R. §200.6(h)(4)(ii)(a), the maximum class size for special classes containing students whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention, shall not exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction. (see 8 N.Y.C.R.R. §200.6(h)(4)(ii)(a)). SRO No. 20-157, page 13).

36. SRO Krolak failed to recognize the DOE's recommended 12:1+(3:1) was insufficient to address J.C.'s highly intensive needs and denied him of a FAPE.

37. Moreover, SRO Krolak failed to acknowledge that 6:1:1 with 60-minute related service sessions was found appropriate for J.C. in both the 2018-2019 School Year and 2020-2021 School Year.

38. SRO Krolak noted "a plan for effective instruction includes direct instruction, which relates to how instruction is provided rather than the student-to-teacher ratio. ... the student would have received both direct instruction and support in a 1:1 setting in the district's recommended [12:1+(3:1)] program." (SRO No. 20-157, page 15). SRO Krolak stated "the

7

student would have received both direct instruction and support in a 1:1 setting in the district's recommended program." (SRO Dec. No. 20-157, page 15).

39. However, SRO Krolak failed to recognize that iBRAIN's 6:1+1 placements were more effective in providing direct instruction than the DOE's recommended 12:1+(3:1) placement, the latter having been found violative of FAPE in the 2018-2019 School Year.

40. SRO Krolak erred by stating "there is no indication in the [witness'] affidavit that the student received or needed direct 1:1 instruction" at iBRAIN. (SRO Dec. No. 20-157, page 15). J.C. needs and receives direct 1:1 instruction at iBRAIN.

41. SRO Krolak ruled that "State guidance indicates that a plan for effective instruction includes direct instruction, which relates to how instruction is provided rather than the student-to-teacher ratio. (see Quality Indicator Review and Resource Guides for Special Education Instructional Practices, Office of Special Educ., [Dec. 2011], p.5, available at http://www.p12.nysed.gov/specialed/techassist/instructpractice-jan12.pdf). … the student would have received both direct instruction and support in a 1:1 setting in the district's recommended program." (SRO Dec. No. 20-157, page 15). SRO Krolak is wrong in using this particular Quality Indicator Review and Resource Guides for Special Education Instructional Practices because it was intended for students who have far less disabilities than J.C.

42. The NYS Education Department Regulation 8 N.Y.C.R.R. §200.6(h)(4)(ii)(a) states that students with "highly intensive" needs such as J.C. require such a high degree of individualized attention and intervention and shall be placed in a class that shall not exceed six students. By contrast, 8 N.Y.C.R.R. §200.6(h)(4)(ii)(b) is about disabled students with

"intensive" needs, while 8 N.Y.C.R.R. §200.6(h)(4)(iii) is about those students with "severe multiple disabilities, whose programs … shall not exceed 12 students.

43. Quality Indicator Review and Resource Guides for Special Education Instructional Practices, cited by SRO Krolak, lumps together all these three categories.

44. SRO Krolak failed to distinguish that direct instruction for students such as J.C. with "highly intensive" needs were not the same as direct instruction for students with "intensive" needs or "severe multiple disabilities." Students with severe multiple disabilities may receive direct instruction in 12:1 setting, whereas J.C. with "highly intensive" needs cannot receive direct instruction in 12:1 setting.

45. SRO Krolak states "Neither party disputes that the student had 'highly intensive needs' … However, the parent's strict adherence to the language in State regulation guiding 6:1+1 special class placements to the exclusion of other appropriate placement options is reductive and overlooks that the student's highly intensive needs were due to his severe multiple disabilities" (SRO Dec. No. 20-157, page 17). SRO Krolak erred in finding that the District did not offer the student a FAPE for the 2019-20 school year under 8 N.Y.C.R.R. §200.6(h)(4)(ii)(a) and the IDEA.

46. SRO Krolak also ignored the fact that the DOE's recommendation of 12:1:3+1 previously had been rejected by both an IHO and SRO.

47. Moreover, even the DOE abandoned the 12:1:3+1 class size recommendations when it met on May 13, 2020 and recommended a 6:1:1 class for J.C.

48. SRO Krolak further erred by failing to address all the other issues raised by Parent and her appeal to the SRO, including but not limited to the appropriateness of iBRAIN for J.C. for

the 2019-2020 school year, and that the equities favored Parent's claims for reimbursement.

## CAUSES OF ACTION

49. Defendant DOE's recommendation of a 12:1:(3+1) special class, denied the Student a FAPE for the 2019-2020 school year, and thus deprives J.C. of a FAPE.

50. SRO Krolak erred in reversing IHO McKeever's FOFD in SRO Dec. No. 20-157.

51. Additionally, SRO Krolak erred in failing to find that iBRAIN was appropriate for J.C. and that the equities favored the Parent's claims.

52. SRO Krolak failed to direct Defendant DOE to fund J.C.'s 2019-2020 school year placement at iBRAIN.

## RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter a Judgment:

   i. Vacating and reversing SED's Office of State Review's decision in SRO Dec. No. 20-157 in its entirety, and ordering that DOE fund J.C.'s placement at iBRAIN during the 2019-2020 school year;

   ii. Declaring that Defendant DOE violated J.C.'s right under the IDEA and denied him of a FAPE.

b. Award to Plaintiffs their costs and attorneys' fees as prevailing party; and

  c. Grant such other and further relief as this Court deems just and proper.

Dated: March 8, 2021

/s/ Peter G. Albert
Peter G. Albert, Esq.
Attorneys for Plaintiffs
Brain Injury Rights Group, Ltd.
300 E. 95th Street, Suite 130
New York, NY 10128